**Reynaldo Toribio ROJAS, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–03–01325–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 2005.

---

Robert A. Morrow, Spring, TX, for appellant.

Kelly Ann Smith, Houston, TX, for appellee.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Reynaldo Toribio Rojas was convicted of the capital murder of a four-year-old boy, resulting from a drive-by

shooting. In five issues, appellant challenges his conviction alleging: (1) the evidence is legally and factually insufficient; (2) he was improperly identified by a witness; and (3) the jury was subjected to outside influence. Because appellant was a juvenile at the time of the offense, the trial court sentenced him to imprisonment for life. We affirm.

## I. Factual and Procedural Background

On the evening of July 15, 1998, Alvaro Cabrera went outside his apartment to put new license plates on his vehicle. It was shortly after 7:00 p.m. and still light outside. Cabrera's four-year-old son followed him outside. While Cabrera was working on his vehicle, his son played near a couch under the stairwell where a young man that he knew, Oscar Davalos, was visiting with several other young men and a young woman. Several of those young men were gang members.

After about ten minutes, a blue mini-van with three occupants drove rapidly into the parking lot at the apartment complex. The occupants yelled and made what appeared to be gang signs with their hands out the windows of the mini-van. Several shots were fired by the two passengers in the mini-van, and Davalos and the others quickly hid behind the couch. Davalos testified that two of the bullets hit the brick wall just above his head. Cabrera's four-year-old son, however, did not take cover behind the couch and was the only one wounded by a bullet. The child was taken to the hospital by ambulance where he died later that evening.

Following the shooting, the mini-van reversed direction quickly and exited the parking lot. Cabrera tried to follow the mini-van. Another resident of the apartment complex, Jerardo Becerra, followed the mini-van to another apartment complex. Becerra was able to drive close enough to the mini-van to see the faces of its three occupants. Approximately five days after the incident, Becerra viewed three photographic line-ups, of five photographs each, and tentatively identified appellant as one of the passengers in the mini-van.

Shortly after the fatal shooting, appellant left by bus for Mexico and does not appear to have returned to Texas until 2002. Maria Reyes, who helped rear appellant, testified that appellant confessed he was in the mini-van and had fired one of the guns, but did not know if the bullet from his gun had killed the four-year-old boy.

## II. Issues and Analysis

**A. Is the evidence legally and factually sufficient to support appellant's conviction for capital murder?**

Appellant contends that the evidence is legally insufficient to support his conviction, because it fails to establish that he had the specific intent to kill a child. Appellant further contends that the evidence is both legally and factually insufficient to establish that he intended for someone to die.

■ In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellants' evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evi-

dence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

In contrast, when evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence in a neutral light and inquire whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). A reviewing court may find the evidence factually insufficient in two ways. *Id.* First, when considered by itself, the evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, after weighing the evidence supporting the verdict and the evidence contrary to the verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484– 85. In conducting the factual-sufficiency review, we must employ appropriate deference so that we do not substitute our judgment for that of the fact finder. *Id.* at 481–82. Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). In conducting a factual-sufficiency review, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v.*

*State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

**1. Is the evidence legally sufficient to convict appellant of capital murder?**

▪ In his first issue, appellant contends that there is no evidence that he intended to kill a child, thus, even under a theory of transferred intent, the evidence is legally insufficient to support a conviction of capital murder. Specifically, appellant argues that capital murder requires specific intent to kill, and there is no evidence that appellant or anyone in the minivan intended to kill a four-year-old child. Appellant's argument is based on section 19.03(a)(2) of the Texas Penal Code, which states that a person commits capital murder if the person commits murder under section 19.02(b)(1) and "the person *intentionally* commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat under [s]ection 22.07(a)(1), (3), (4), (5), or (6)." TEX. PENAL CODE § 19.03(a)(2) (emphasis added). Appellant urges that intent to murder an adult cannot be transferred to a four-year-old child to satisfy the specific intent requirement for capital murder.

▪ We disagree. As the State points out in its appellate briefing, the plain language of the statute for capital murder of a child under the age of six does not require appellant to have intentionally killed the child; rather, to find appellant guilty of capital murder, he need only have *knowingly* killed the four-year-old victim. Capital murder, as it pertains to this case, requires the following:

> (a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and:
>
> (8) the person murders an individual under six years of age.

TEX. PENAL CODE § 19.03(a)(8). Under section 19.02, a person commits murder if he, "intentionally or *knowingly* causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1) (emphasis added). Accordingly, a person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual under six years of age. *McCollister v. State*, 933 S.W.2d 170, 172 (Tex.App.— Eastland 1996, no pet.). Thus, murder of a child under the age of six is capital murder.

Because the evidence is legally sufficient to support a conviction for murder of a child under six years of age, any lack of specific intent to kill a person under six years of age does not render the evidence legally insufficient to support appellant's conviction for capital murder. We overrule appellant's first issue.

**2. Is the evidence legally and factually sufficient to prove that appellant intended for someone to die?**

■ In appellant's second and third issues, he contends that the evidence is legally and factually insufficient to establish that he intended for the victim or another person to die. Specifically, appellant contends that the evidence fails to establish that he intended a death to result from his conduct.

The offense of capital murder is committed if a person intentionally or knowingly causes the death of an individual under six years of age. *Id.* Pertinent to this case, "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE § 6.03(b).

Although witnesses saw only the front-seat passenger in the mini-van fire a gun, appellant, the back-seat passenger, confessed that he was at the scene of the murder, and that he fired his gun but did not know whether the bullet from his gun was the one that had hit the child. Furthermore, evidence recovered from the scene of the shooting established that two different guns were fired for a total of at least five shots. The record also contains evidence that this shooting was in retaliation for an earlier, gang-related shooting. The evidence supports the inference that appellant knew his shooting the gun in the general direction of a group of people including the four-year-old victim was reasonably certain to result in a death. We overrule appellant's second and third issues.

**B. Did the trial court err in denying appellant's motion to suppress the in-court identification based on allegedly impermissibly suggestive photographic line-ups?**

■ In his fourth issue, appellant contends that the trial court erred in denying his motion to suppress Jerardo Becerra's in-court identification of appellant. Specifically, appellant argues that the trial court should have excluded this evidence because it was tainted by an unduly suggestive photographic line-up identification given that (1) Becerra knew that the police suspected one of the men in each of the three photographic line-ups as being the men in the mini-van fleeing from the murder scene, and (2) appellant stood out from the others in the photographic line-ups.

Becerra lived in the apartment complex where the shooting took place. He testified that on July 15, 1998, he heard some shots while in his second-floor apartment. Becerra then ran outside and saw three men in a mini-van, the front passenger in possession of a pistol. He saw the man fire the pistol and then pursued the mini-van in his truck for several miles to another apartment complex, where the police took over. During the pursuit, Becerra

448

pulled up along side the mini-van and observed the driver and one side of the back-seat passenger.

On July 20, 1998, Becerra was asked to view three photographic line-ups of five photos each. The photographs were all of young males of similar race, height, build, and hair design. Becerra tentatively identified the fifth photograph in one of the spreads, the photograph of appellant, as the back-seat passenger in the mini-van. In the photo spread, appellant was the only one with this head tilted upward. The others were either looking straight ahead or downward.

In court, Becerra initially testified that the police told him that the suspects' photos were in the photographic line-ups. Shortly thereafter, Becerra testified that he was never told that the suspects were definitely in the photographic line-ups. Becerra's further testimony as to whether the police officer told him that the suspect's photograph was in the photographic line-ups continued to vary. The police officer, Hector Riojas, who had conducted the photographic line-ups, testified that he had no specific recollection of what was told to appellant during the line-up over five years before trial. However, Officer Riojas testified that his standard procedure was to explain to the witness that the suspect may or may not be in the line-up. Homicide Detective Jose Selvera, who was present during the photographic line-ups, testified that he specifically remembered that appellant was not told that suspects were in the photographic line-ups.

■ On appeal, appellant contends that the trial court erred in denying his motion to suppress Becerra's in-court identification of appellant because it was tainted by an impermissibly suggestive pretrial photographic line-up identification of appellant. To warrant the exclusion of Becerra's in-court identification, appellant

had to show that the photographic line-up identification procedure was impermissibly suggestive. *Santos v. State*, 116 S.W.3d 447, 451, 455 (Tex.App.—Houston [14th Dist.] 2003, pet. ref'd). A pretrial procedure may be suggestive, but that does not necessarily mean it is impermissibly so. *Barley v. State*, 906 S.W.2d 27, 34 (Tex. Crim.App.1995). Suggestiveness may be created in the manner in which the pretrial identification procedure is conducted, for example, by police pointing out the suspect or suggesting that a suspect is included in the line-up. *Id.* at 33. A pretrial identification procedure is not impermissibly suggestive, however, merely because a witness may have believed one of the individuals in the line-up was a suspect. *Harris v. State*, 827 S.W.2d 949, 959 (Tex.Crim.App.1992); *Abney v. State*, 1 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

■ Although there was conflicting testimony as to whether Becerra knew that someone in the photographic line-ups was a suspect in the shooting, that fact did not make the photographic line-up identification impermissibly suggestive. A line-up is not rendered impermissibly suggestive simply because a witness is told that the line-up includes a suspect, because a witness would normally assume that to be the case. *Harris*, 827 S.W.2d at 959.

Appellant further contends that the trial court should have excluded the in-court identification because it was tainted by an unduly suggestive photographic line-up identification given that appellant allegedly stood out from the others in the photographic line-ups. Specifically, appellant argues that he was posed differently from the others in that his head was tilted higher and he was looking directly into the camera.

After review of the record and the photographic line-up therein, we find nothing that rises to the level of being impermissibly suggestive. The photographs are arranged in rows with three in the top row and two in the bottom row. Appellant's photograph is the last one in the bottom row. His head is tilted upward towards the middle photograph in the first row. The individuals are all male and of similar age, race, size, build, and hair design. Nothing in the evidence suggests that any differences in the poses were intentional or for the purpose of encouraging Becerra to select appellant's photograph. Although it may be possible to configure a photographic line-up in a way that might suggest a particular identification, we do not find that the photographic line-up in this case was impermissibly suggestive.

 Even assuming the pretrial photographic line-up was suggestive, it still would be admissible because, in the totality of the circumstances, there is no substantial likelihood of misidentification. *See Webb v. State*, 760 S.W.2d 263 (Tex.Crim. App.1988). To determine the reliability of the in-court identification testimony under the totality of the circumstances, the following five factors should be considered:

(1) the opportunity of the witness to view the criminal at the time of the crime;

(2) the witness's degree of attention;

(3) the accuracy of the witness's prior description of the criminal;

(4) the level of certainty demonstrated by the witness at the time of the confrontation; and

(5) the lapse of time between the alleged act and the time of the confrontation.

*Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex.Crim. App.1999). First, we weigh these factors in a light favorable to the trial court's ruling; then we weigh the factors, viewed in this light, de novo "against the 'corrupting effect' of the suggestive identification itself." *Ibarra*, 11 S.W.3d at 195–96.

The record reflects that Becerra had sufficient opportunity to view the rear passenger in the mini-van. He followed the mini-van and drove up alongside it specifically to see its occupants. He saw the suspect in daylight. Although Becerra only tentatively identified appellant in the photographic line-up, he looked at fifteen photographs and never misidentified or failed to identify him. Nor did Becerra's description of the suspect differ from appellant. Furthermore, the photographic line-up took place only five days after the fatal shooting. Thus, under the totality of the circumstances, there is nothing to suggest a substantial likelihood of misidentification could have resulted from the photographic line-up.

 Furthermore, when an in-court identification is based upon knowledge independent from the allegedly improper pre-trial procedure, it is admissible. *See Santos v. State*, 116 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2003, writ ref'd). Thus, because Becerra stated that he was able to make his in-court identification independently from the photographic line-up based on his independent recollection of seeing appellant in the mini-van, the in-court identification is admissible.

We conclude the out-of-court identification procedure was not impermissibly suggestive, the in-court identification was made independently, and there is no substantial likelihood of misidentification. Accordingly, we overrule appellant's fourth issue.

**C. Did the trial court err in denying appellant's motion for a mistrial or new**

**trial based on an allegedly impermissible outside influence on the jury?**

In his fifth issue, appellant contends that he is entitled to a mistrial and/or a new trial based on an alternate juror inadvertently joining the jury in the jury deliberation room following the conclusion of appellant's trial. We review the trial court's decisions to deny a mistrial and to deny a new trial for an abuse of discretion. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999); *Rent v. State,* 982 S.W.2d 382, 384 (Tex.Crim.App.1998).

The record reflects that the alternate juror was in the deliberation room for approximately fifteen minutes before the mistake was realized. The alternate juror was immediately removed from the jury deliberation room, and the jury was instructed to disregard anything the alternate juror may have said and to begin deliberations again. Outside the jury's presence and without their knowledge, the trial court questioned the alternate juror about his brief time in the jury deliberation room. Thereafter, the trial court denied appellant's request for a mistrial. Appellant then filed a motion for a new trial. The State responded and admitted an affidavit from the jury foreperson. After fully developing the facts surrounding the unauthorized presence of the alternate juror, the trial court denied appellant's motion for a new trial.

Article 36.22 of the Texas Code of Criminal Procedure states: No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court. TEX.CODE CRIM. PROC. ANN. art. 36.22 (Vernon Supp. 2004). The purpose of this statute is to preserve the confidentiality of the jury's deliberations so that the jurors may fully and freely discuss the case. When jurors converse with unauthorized persons about a case, injury to the accused is presumed. *Alba v. State,* 905 S.W.2d 581, 587 (Tex. Crim.App.1995). The State, however, may rebut this presumption of harm by showing that the case was not discussed or that nothing prejudicial to the accused was said. *Id.*

The record fairly demonstrates that the information did not prejudice appellant and that the State rebutted the presumption of harm. The alternate juror testified that while he was in the jury deliberation room, one of the jurors recommended a foreperson whom a couple of jurors supported and to whom none objected.[1] Thus, the alternate had no influence over who was chosen as the foreperson. Thereafter, several jurors wanted to see the evidence again. Although the alternate supported that decision, several other jurors also supported the decision. Thus, the evidence would have been reviewed regardless of whether the alternate supported that decision. The alternate testified that while the evidence was being circulated, there were conversations amongst small groups of jurors. The alternate did not provide any answers to questions raised about the evidence. The evidence was still being circulated amongst the jurors when the alternate was removed from the jury room.

The foreperson testified in his affidavit that the jurors did not have a formal vote

---

1. When asked if he voted for the foreperson, the alternate juror replied,

 No, I don't think there was a formal vote, although I did ask if-someone asked whether anyone wanted to volunteer. And nobody volunteered. And then somebody recommended somebody and there was a couple of supporting yeses and nobody raised any objections, so.

 \* \* \*

 That person was elected.

on the foreperson; rather, there was a general consensus that he should be the foreperson. He testified that several jurors then wanted to see the evidence, so he requested it and circulated it around the room. The foreperson testified in his affidavit that, "We never talked about the case or took a vote until after the alternate had been taken out of the jury room." The presence of the alternate juror for fifteen minutes clearly did not prejudice appellant in that actual deliberations had not yet begun and the alternate did not influence any decisions by the jury. The same foreperson would have been chosen, and the jury would have asked to look at the evidence regardless of whether the alternate was present.

The evidence reflects that the presence of the alternate juror did not influence or prejudice any of the jurors. Accordingly, from this record, we cannot say that the trial court abused its discretion in denying appellant's motion for mistrial and motion for a new trial. We overrule issue five.

Having overruled all of appellant's issues, we affirm the trial court's judgment.