Affirmed and Memorandum Opinion filed August 29, 2006













Affirmed and Memorandum Opinion filed August 29, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00314-CR

____________

 

ISAAC EUGENE DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 9th
District

Waller County, Texas

Trial Court Cause No. 04-08-11884

 





 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Isaac Eugene Davis, of
aggravated robbery.  The jury assessed punishment at forty years= confinement in
the Texas Department of Criminal Justice, Institutional Division. 
Appellant presents three points of error for our review.  We affirm. 


Background

 

Mithu Debnath
owns a Jiffy Mart in Waller,
 Texas.  On February 20,
2004, a masked man entered the Jiffy Mart and held up a store clerk and Debnath at gunpoint.  The man took money from the
register and from the counter underneath the register.  Before leaving the
store, the man held the gun to Debnath=s head and pulled
the trigger, but the gun did not fire.  The man left the store on foot,
and Debnath chased after him.  Around the corner
of the store, the man fell down and then continued to run.  While chasing
the man, Debnath called 911.  Debnath chased the man through an open field and ran past a
man playing with two dogs.  The man ran into the Bayou Bend Apartments,
but by the time the police arrived, the man could no longer be found.  

Jerrance Perry testified
he was in the parking lot of the Bayou Bend Apartments on February 20 when
appellant, looking sweaty and dirty, ran up to Perry and told him he had been
jumped.  Perry offered to help appellant go after the people, but
appellant wanted to leave.  Perry and appellant immediately left the
apartments, and Perry drove appellant to Tawana
Fredrick=s home in Hempstead.[1] 
Perry testified that during the drive, appellant pulled money and a gun out of
his pocket and asked Perry to give the gun to a man named Jonathan Alexander,
who they both knew.  Appellant also took off a grey sweater and threw the
sweater and a ski cap out of the car window.  

Fredrick testified Perry brought appellant to her home, and
appellant confessed to robbing the Jiffy Mart.  Fredrick testified she
promised to keep appellant=s secret; then a month later, appellant
accused Fredrick of Asomething@ she testified she
did not do and threatened to blow up her house with her inside.  Fredrick
testified she called Crimestoppers out of spite and
to see if they would give a reward.  She testified she called Crimestoppers two more times until they finally referred
her to the Hempstead police.  

 

Police recovered what they believed to be the gun appellant
used in the robbery based on a different chain of events.  The man who
robbed the Jiffy Mart threw money at Debnath after
leaving the store.  After returning to the store, Debnath
went outside to see if any money was still outside on the ground.  In the
location where the man fell, Debnath found a clip to
a gun and turned it into the police.  On February 26, the Houston police stopped a car with four people
inside, including Jonathan Alexander and Jerrance
Perry.  When the driver of the car exited the vehicle, an officer saw the
driver drop something and kick it underneath the car.  Police recovered a
.32 caliber Beretta from underneath the car.  The driver of the car was
identified as Jonathan Alexander.[2] 
After receiving the tip from Crimestoppers, the
Waller police retrieved the gun from Houston
and matched it to the clip found outside the Jiffy Mart by Debnath. 
Sergeant Richard Warstler of the Waller Police
Department testified they were only able to solve this case because Tawana Fredrick called Crimestoppers. 


Appellant=s defensive theory was that the police
conducted a poor investigation, the State=s witnesses lacked
credibility, and the facts succinctly show Jerrance
Perry, rather than appellant, committed this crime.  The jury found
appellant guilty.  

Discussion

In three points of error, appellant contends the trial
court erred by: (1) denying appellant=s motion for
directed verdict based on legally and factually insufficient evidence; (2) not
declaring a mistrial after a State=s witness violated
an order in limine; and (3) charging the jury on the
use or exhibition of a deadly weapon.  

I.                   
Motion for Directed Verdict

In his first point of
error, appellant claims the trial court erred by denying appellant=s motion for
directed verdict because the evidence is legally and factually
insufficient.  Although appellant phrases his challenge to the trial court=s
ruling on his motion for directed verdict as one of both legal and factual
sufficiency, the law is well settled that a challenge on appeal to the denial
of a motion for directed verdict is a challenge to the legal sufficiency, not
the factual sufficiency, of the evidence.  Turner v. State, 101
S.W.3d 750, 761 (Tex. App.CHouston [1st Dist.] 2003,
pet. ref=d).  

 

When reviewing legal
sufficiency, we view all the evidence in the light most favorable to the
verdict and then determine whether a rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979); Salinas
v. State, 163 S.W.3d 734, 737 (Tex.
Crim. App. 2005).  The jury, as the trier of fact, is the sole judge of the credibility of
witnesses.  See Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  The jury chooses whether or not to
believe all or part of a witness=s testimony.  Id.  We do not engage in a
second evaluation of the weight and credibility of the evidence.  Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d).  Thus, if there is evidence establishing
guilt beyond a reasonable doubt, we are not authorized to reverse the judgment
on sufficiency of the evidence grounds. 

The State charged
appellant with aggravated robbery.  A person commits the offense of
robbery if, in the course of committing theft, and with intent to obtain or
maintain control of the property, the person intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death.  Tex. Penal Code Ann. ' 29.02(a)(2) (Vernon 2003).  Robbery becomes aggravated when a
person commits robbery and uses or exhibits a deadly weapon.  Tex. Penal Code Ann. ' 29.03(a)(2) (Vernon 2003).

 

Appellant first argues the State=s evidence was
insufficient to identify appellant as the person who committed the
offense.  He contends that, among the five people who either witnessed the
robbery or saw appellant afterwards, there is no common thread of
identification testimony.  Appellant references the following
inconsistencies: (1) Isabell Pacas,
the Jiffy Mart clerk, could not identify the robber at all because he wore a
mask; (2) Mithu Debnath,
the Jiffy Mart owner, described the robber as wearing a black mask and a
t-shirt, but he could not say if it was a long or short sleeved shirt; (3)
Jacob Roy, who saw two men run past him in a field, testified the first man
wore a black knit cap but he did not know what type of clothing the man wore;
(4) Jerrance Perry, who allegedly drove appellant
from the Bayou Bend Apartments, testified appellant wore a grey sweater; and
(5) Tawana Fredrick testified appellant wore a
t-shirt and jeans.  Perry also testified appellant took off his grey
sweater and wore a t-shirt underneath it.  

There are some inconsistencies in the testimony about what
type of shirt the unidentified robber wore and what appellant was seen
wearing.  Other testimony, however, establishes the following
events.  Debnath and Pacas
both testified a black man wearing a black ski-mask entered the Jiffy Mart with
a gun.  After the man left the store, Debnath
testified he chased the robber through an open field by the Bayou Bend
Apartments and saw a man playing with two dogs.  Debnath
slowed in his chase of the robber because he was afraid of the dogs.  Roy testified he saw two
men run past him, one chasing the other, while he played with his two unleashed
pit bulls in a field by the Bayou Bend Apartments.  Roy testified he knew appellant from growing
up in the area, but he did not recognize the man on February 20 and could not
say at trial if it was appellant.  Debnath also
testified he saw the robber run into the Bayou Bend Apartments, but by the time
Debnath reached the apartments, the robber could not
be found.  Perry testified that while he was working on his car at the
Bayou Bend Apartments, appellant rushed up and said he needed to leave quickly
because he had just been Ajumped.@ 
Perry and appellant immediately left the apartment complex, and while riding in
the car, appellant took money and a gun out of his pocket, and he threw a
sweater and a hood that looked like a face mask out of the car window. 
Fredrick testified appellant confessed to Fredrick that he robbed the Jiffy
Mart, and appellant also told her he had been chased by Jacob Roy=s dog.  

Identity may be proved by direct or circumstantial
evidence.  Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.CAustin 2000, pet. ref=d).  The chain of events
between the robber=s flight from the Jiffy Mart, through the open field running
by Jacob Roy, and into the Bayou Bend Apartments could lead a rational trier of fact to find appellant was the person who robbed
the Jiffy Mart.  

 

Appellant next argues the State=s witnesses= testimony
lacked credibility because of inconsistencies as to identification, apparel of
the perpetrator, actions of the parties, and the great amount of time between
the events in question and the statements and testimony of witnesses. 
Even though the State=s witnesses= testimony differed in some of the details, it
was the jury=s duty to determine the credibility of the witnesses and the
weight to give their testimony.  See Garza v. State, 633 S.W.2d 508, 514 (Tex. Crim.
App. 1982).  The jury could also choose to believe or not believe the
witnesses, or choose to believe or not believe any portion of their
testimony.    Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Rojas v. State, 171 S.W.3d 442,
446 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d). 
We will not engage in a second evaluation of the weight and credibility of the
evidence.  Muniz, 851 S.W.2d at 246; Harris,
164 S.W.3d at 784.  

Viewing the evidence in the light most favorable to the
jury=s verdict, we hold a rational trier of fact
could have found the essential elements of aggravated robbery beyond a
reasonable doubt.  The chain of events immediately following the robbery
linked appellant to the scene, and the police linked the weapon recovered in Houston to the
crime.  Moreover, Fredrick testified about appellant=s confession to her
that he committed the robbery.  Therefore, we overrule appellant=s first
point of error.  

II.                
Motion in Limine

 

In his second point of error, appellant claims the trial
court erred in not declaring a mistrial after a State=s witness violated the
trial court=s ruling on appellant=s motion in limine. 
Appellant sought protection from testimony of prior criminal acts, extraneous
crimes or misconduct, and other extraneous acts appellant may have
committed.  The trial court granted the motion in limine. 
During appellant=s cross-examination of State=s witness Tawana
Fredrick, defense counsel was addressing Fredrick=s prior relationship with
appellant.  Defense counsel asked Fredrick how long she and appellant
attended the same school, and Fredrick answered: AWhenever
he got locked up, whenever, eighth grade.  I think B don=t think he attended ninth, tenth, eleventh grade.  I can=t
recall.  I was in middle school when he went to jail, I think.@  

Appellant waived review of this issue on appeal.  The
proper method of preserving error for the admission of improperly offered
evidence is for appellant=s counsel to: (1) state a timely, specific objection;
(2) obtain a ruling on the objection; (3) move for an instruction for the jury
to disregard; (4) obtain a ruling on the instruction, and if sustained, have
the jury instructed; (5) move for a mistrial; and (6) obtain a ruling on the
motion for mistrial.  Hadden v. State, 829 S.W.2d 838, 841 (Tex. App.CCorpus
Christi 1992, pet. ref=d).  Here, appellant objected to Fredrick=s
reference to appellant=s prior incarceration.  He moved for an instruction
to disregard, and the trial court promptly instructed the jury
accordingly.  Appellant did not, however, move for a mistrial.  AIt is well settled that when appellant has been given all
the relief he requested at trial, there is nothing to complain of on appeal.@ 
Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim.
App. 1993).  The trial court granted appellant all the relief he
requested.  Accordingly, we overrule appellant=s second point of
error.       

III.              
Jury Charge Error

In his third point of error, appellant claims the trial
court erred in charging the jury on the use or exhibition of a deadly
weapon.  When an appellant asserts jury charge error on appeal, we must
first determine whether error actually exists in the charge.  Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  If jury charge error
exists, we then must determine if the error caused sufficient harm to warrant
reversal.  Hutch, 922 S.W.2d at 170B71; ; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Appellant did not preserve error
for this issue because he stated he had no objections to the charge.  In
the context of charge error, preservation of error only becomes an issue when
we assess harm.  Ngo v. State, 175 S.W.3d 738,
743 (Tex. Crim. App. 2005).  In Almanza,
the court explained that unobjected to jury charge
error requires reversal of a judgment only when it can be shown that the error
caused egregious harm to the defendant.  Cartwright
v. State, 833 S.W.2d 134, 135 (Tex. Crim. App.
1992).  

 

Appellant asserts the trial court could not charge the jury
on the use or exhibition of a deadly weapon because the gun that linked
appellant to the offense had no firing pin and was incapable of being
fired.  Thus, the pistol could not meet the statutory definition of a
deadly weapon.  Appellant compares the non-functioning gun admitted into
evidence in this case to an unloaded BB gun.  Appellant incorrectly relies
on an appellate court decision which was overturned on appeal.  See
Adame v. State, 37 S.W.3d 141 (Tex. App.CWaco 2001), rev=d, 69 S.W.3d 581 (Tex. Crim. App. 2002).  In that case, the Court of Criminal
Appeals held a jury could rationally infer the BB gun pointed at a store clerk=s
head was loaded and capable of causing serious bodily injury.  69 S.W.3d at 582. 

Texas Penal Code, Section 1.07(17) defines a deadly weapon
as a firearm.  Tex. Penal Code Ann. ' 1.07(17) (Vernon Supp. 2005). 
An automatic pistol, regardless of whether it contains a firing pin, is still a
firearm.  Walker v. State, 543 S.W.2d 634, 637 (Tex. Crim.
App. 1976).  Such a weapon is manifestly designed for the purpose
of inflicting death or serious bodily injury.  Id.; Lewis v. State, 852 S.W.2d 667, 669 (Tex. App.CHouston [14th Dist.] 1993, no pet.).  It
is not necessary to prove a firearm is really capable of causing death, either
in the manner of its actual use or in the manner of its intended use.  Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).  The State must simply prove
the object was a firearm in fact.  Id. 
Because the trial court is not at liberty to omit the statutory definition
of a Adeadly weapon@ from the jury instructions under
any circumstances when it is part of the Alaw
applicable to the case,@ the trial court did not err
in including the definition here.  See id. at
619 (citing Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon
Supp. 2005)).  Because we find no error in the charge, we
overrule appellant=s third point of error.  




Conclusion

Having considered and overruled each of appellant=s points
of error, we affirm the judgment of the trial court.  

 

 

/s/        
John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 29, 2006.

Panel consists of
Justices Anderson, Hudson, and Edelman.

Do Not Publish C Tex. R. App. P. 47.2(b).














[1]  Perry gave conflicting
statements before trial.  In his first statement, he told police he
dropped appellant off at a chicken restaurant, and later, he told police he
took appellant to Fredrick=s home. 





[2]  Perry testified that when
the police stopped the car, Alexander wanted to get rid of the gun. 
Alexander, however, testified the gun was Perry=s, and
Perry wanted Alexander to get rid of it.