Affirmed and Memorandum Opinion filed January 29, 2009








Affirmed and Memorandum Opinion filed January 29, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-01036-CR

NO. 14-07-01037-CR

_______________

 

CURTIS DEMITRIS HAWKINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause Nos. 05CR1428 &
05CR1429 

                                                                                                                                         
      

 

M E M O R A N D U M   O P I N I O N

Appellant
Curtis Demitris Hawkins was convicted of the offense of indecency with a child
and sexual assault of a child.  A jury sentenced appellant to five years= confinement for the indecency
conviction and ten years= confinement for the sexual assault conviction, both
sentences to be served concurrently in the Texas Department of Criminal
Justice, Institutional Division.  In a single issue, he challenges the factual
sufficiency of the evidence to support his conviction.  We affirm.








 

I. Factual Background

In the
early morning hours of March 26, 2005, appellant sexually assaulted a
fifteen-year-old relative at her home in Galveston County.  The events
surrounding the sexual assault were described by trial witnesses as follows.

After
spending the evening out, appellant returned to the complainant=s home at approximately 2:30 a.m.[1] 
The complainant testified that appellant got into her bed, which was not unusual
because he often slept in the bed with her when he spent the night at her
home.  Although she was asleep, she awoke when she felt appellant=s hand on her leg.  According to the
complainant, appellant began rubbing her leg, then slid his hand inside her
shorts and inserted his finger in her vagina.  He also partially removed her
bra and put his mouth on her breast.  He then asked the complainant to get on
the floor; he helped to remove her clothes.  The complainant testified that she
was scared and was silently crying while this was occurring, and that she told
appellant Ano@ when he asked if he could penetrate
her.  She further stated that appellant lay on top of her, penetrated her
vagina with his penis for approximately ten minutes, then ejaculated in his
shorts.  She then went to sleep with appellant in the same bed.[2]









The next
day, the complainant told her cousin and her boyfriend about the assault; she
told her mother about the assault two days later.  The complainant stated she
was afraid to tell her mother because she did not want appellant to get into
trouble.  Her mother and father immediately took her to Mainland Medical Center
for an examination, and she was transferred to the University of Texas Medical
Branch (UTMB) in Galveston.  At UTMB, the complainant was examined by a
certified Sexual Assault Nurse Examiner (SANE).[3] 
The complainant provided the SANE with a statement about the assault, including
the date, time,  location, and the name of her assailant (appellant).  The SANE
conducted a physical examination of the complainant and found two tears on the
complainant=s genital area.  The tears were illustrated on a diagram admitted into
evidence.  The SANE also collected anal and vaginal swabs and smears, facial
and breast swabs, saliva, blood, and hair samples, and fingernail scrapings. 
She also collected the complainant=s underwear, bra, and the sanitary
pad the complainant was wearing at the time of the exam.  At the conclusion of
her report, the SANE noted that her impression from the exam was that the
complainant had been sexually assaulted.








Dr.
James Lukefahr, prior medical director for the ABC Center, UTMB=s facility for examining abused or
neglected children,[4] testified
that on March 30, 2005, the complainant had a follow-up exam at UTMB=s ABC Center in Galveston.[5] 
The nurse-practitioner=s report taken during the complainant=s visit indicated that the
complainant did not have any physical symptoms or prior sexual history, but the
physical exam revealed that she had abrasions to her genital area.[6] 
Dr . Lukefahr stated that this type of injury is considered a definitive
finding of penetrating trauma to the genital organ.  Additionally, he explained
that because the tears or abrasions were found at the same time and in close
proximity to each other, they probably occurred at the same time.[7] 
He concluded that the exam indicated the complainant had been sexually
penetrated.

Finally,
the State presented evidence that semen was detected on the complainant=s sanitary pad collected by the
SANE.  A forensic scientist with the Department of Public Safety Crime
Laboratory in Houston conducted the analysis and subsequent DNA profile of the
sanitary pad and semen and concluded that material obtained was consistent with
a mixture of the complainant=s and appellant=s DNA. 

Appellant
denied having any type of sexual encounter with the complainant.  He did not
provide a direct explanation as to how or why his semen was on the complainant=s sanitary pad, but he testified that
he was having a sexual relationship with the complainant=s mother.  He explained that they
often slept in the complainant=s bedroom together while the complainant slept in the mother=s room.[8] 
He said that on the night in question, he slept with the complainant=s mother in the mother=s bedroom.  He stated that the
complainant=s mother may have been angry with him because he was also having a sexual
relationship with her sister.

The jury
found appellant guilty of indecency with a child by contact and sexual assault
of a child as charged in the indictments, and assessed punishment at five years= and ten years= confinement, respectively,  in the
Texas Department of Criminal Justice, Institutional Division.  The trial court
sentenced appellant accordingly; this appeal timely ensued.








II. Issue Presented

In
appellant=s sole issue, he challenges the factual sufficiency of the evidence
supporting the jury=s verdict on both charges.

III. Analysis

A.        Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
review all the evidence in a neutral light.   Watson v. State, 204
S.W.3d 404, 414B15 (Tex. Crim. App. 2006);  Drichas v. State, 175
S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether (1) the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury=s verdict is clearly wrong and manifestly unjust, or (2) whether,
considering conflicting evidence, the jury=s verdict is against the great weight
and preponderance of the evidence.   Watson, 204 S.W.3d at 414B15, 417;  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  We cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because, on the quantum of
evidence admitted, we would have voted to acquit had we been on the jury; nor
can we declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury=s resolution of that conflict.  Watson,
204 S.W.3d at 417. Instead, we must give due deference to the jury=s determinations, particularly those
concerning the weight of the evidence and the credibility of witness testimony.[9] 
See  Johnson, 23 S.W.3d at 8B9. 








A person
commits indecency with a child by contact if, with a child younger than 17
years of age and not the person=s spouse, the person engages in sexual contact with the child
or causes the child to engage in sexual contact. See Tex. Penal Code Ann. '21.11(a)(1) (Vernon 2001).  A person
commits sexual assault of a child if the person intentionally or knowingly
causes the penetration of the anus or sexual organ of a child by any means.  Id.
' 22.011(a)(2)(A) (Vernon 2005).  The
uncorroborated testimony of a sexual assault victim is sufficient to warrant a
conviction. See Tex. Code. Crim.
Proc. Ann. art. 38.07 (Vernon 2005); Sandoval v. State, 52 S.W.3d
851, 854 n. 1 (Tex. App.CHouston [1st Dist.] 2001, pet. ref=d).

B.        Contested Evidence

Here,
appellant asserts several bases for his factual-sufficiency challenge.  First,
he complains that the complainant=s injuries are not consistent with
sexual assault.  Next, he challenges the DNA evidence by asserting that the
complainant could not have been wearing the same sanitary pad two days after
the sexual assault occurred.  Finally, he contends that the complainant had a
motive to lie.  We address each of these arguments in turn.

Regarding
the nature of the complainant=s injuries, the SANE who examined the complainant after the
assault concluded that the complainant had been sexually assaulted.  In
addition, another SANE testified at appellant=s trial that the injuries to the
complainant=s genitals were consistent with sexual assault.  Further, Dr. Lukefahr
testified that such  injuries are considered to be Aa definitive finding of penetrating
trauma to the genital organ.@  Viewing this evidence in a neutral light, it is sufficient
to support the jury=s conclusion that the complainant was sexually assaulted.








Turning
to the DNA evidence collected from the complainant=s sanitary pad, the appellant
contends that this evidence is impossible to believe because a teenage girl
would not wear the same panties and sanitary pad for two days during her
menstrual cycle.  But the presence of semen on the sanitary pad at the time of
the complainant=s examination does not necessarily mean she was wearing the
same sanitary pad and panties two days after the assault.  Both the SANE and
Dr. Lukefahr testified that, per the standards set by the Office of the
Attorney General, DNA evidence may be collected up to 96 hours after an
assault.  Thus, the jury reasonably could have inferred that appellant=s semen was flushed from the
complainant=s vaginal cavity to the sanitary pad after the assault and before the
exam.

Finally,
appellant challenges the complainant=s credibility because, according to
appellant, she had a motive to lie.  Appellant testified that he was having a
sexual relationship with both the complainant=s mother and the complainant=s aunt.  He contends that these
sexual relationships caused the complainant=s mother to be angry with him.  He
also asserts that the complainant=s mother may have also been jealous
of his close relationship with the complainant.  This anger and jealousy,
according to appellant, may have caused the complainant=s mother to coerce, threaten, or
trick the complainant into lying about the assault.  But no evidence was
presented that the complainant was aware of the relationships appellant was
having with her mother and aunt.  There was also no evidence  that the
complainant=s mother was jealous, angered, or concerned about the appellant=s relationship with the complainant
before the assault.  The evidence is not factually insufficient because the
jury chose to believe the complainant, despite appellant=s contention that she had a motive to
lie.[10]

In sum,
the evidence supporting appellant=s conviction consists of the
complainant=s testimony regarding the assault, as well as physical and DNA evidence. 
Although appellant denied committing the assault, the jury indicated by its
verdict that it found the complainant=s testimony more credible than that
of appellant. We therefore overrule appellant=s sole issue.

IV.  Conclusion








Viewing
all the evidence in a neutral light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust, nor is
the verdict against the great weight and preponderance of the evidence.  We
therefore overrule appellant=s challenge to the factual sufficiency of the evidence and
affirm the trial court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Guzman and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  According to testimony, appellant did not
permanently live at the complainant=s
residence but regularly stayed overnight there.





[2]  The complainant=s
mother testified that she saw the complainant and appellant sleeping in the
complainant=s room that night.





[3]  The SANE who conducted the complainant=s initial examination was deceased at the time of
appellant=s trial, and another SANE testified as to her reports
and findings.





[4]  At the time of trial, Dr. Lukefahr was no longer the
medical director for this center.





[5]  Although the exam was conducted by a pediatric
nurse-practitioner, Dr. Lukefahr was the supervising physician who reviewed her
notes, documentation, and photographs, and signed off on her final report.





[6]  A pediatric nurse-practitioner also took the
complainant=s statement regarding the incident, then completed an
Emotional Behavioral Symptoms checklist.  On the checklist, the nurse noted
that complainant stated she was Aafraid
of his, meaning [appellant=s] reaction,
when I see him again.  He told my daddy I was lying.  Why would I lie on him? 
He=s my best friend.@ 
The complainant also said, AI know what
[appellant] did was wrong, but I don=t
hold any anger towards him . . . maybe this sounds strange, but I sort of miss
him.  He is my best friend.@  Finally, the
complainant reported to the SANE that it burned when she went to the bathroom,
but she could not state with certainty whether there was blood resulting from
the penetration because she was menstruating at the time.  At trial, Dr.
Lukefahr read the complainant=s statement to
the jury.





[7]  Although the pediatric nurse-practitioner referred
to the injuries as abrasions and the SANE referred to the injuries as tears,
Dr. Lukefahr stated that their findings were consistent with one another in
terms of location on the genital area and their conclusions as to the cause of
the injuries.  He also stated  that the nurse-practitioner referred to the
complainant=s injuries as abrasions rather than tears because when
she examined the complainant four days after the assault the injuries would
have had some opportunity to heal.





[8]  Appellant testified that the complainant=s bedroom was actually his room and that the
complainant slept in her mother=s bedroom.  He
admitted, however, that the complainant slept in the same bed with him one or
two times per month.





[9]  A jury is free to believe or disbelieve all or any
part of a witness=s testimony.  Rojas v. State, 171 S.W.3d 442,
446 (Tex. App.C Houston [14th Dist.] 2005, pet ref=d).  (citing Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986) (en banc)).





[10]  We must defer to the jury=s determinations concerning the weight of the evidence
and the credibility of witness testimony.  Johnson, 23 S.W.3d at 8B9.