ACCEPTED
12-14-00255-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/2/2015 11:53:14 PM
CATHY LUSK
CLERK

## NUMBER 12-14-00255-CR

## IN THE TWELFTH DISTRICT COURT OF APPEALS
## TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/2/2015 11:53:14 PM
CATHY S. LUSK
Clerk

## DENNIS MONTRELL BENDY,
**Appellant**

**v.**

## THE STATE OF TEXAS,
**Appellee**

From the 241st District Court of Smith County, Texas
Trial Cause Number 241-1575-13

## STATE'S BRIEF

## ORAL ARGUMENT NOT REQUESTED

**D. MATT BINGHAM**
Criminal District Attorney
Smith County, Texas

**AARON REDIKER**
Assistant District Attorney
State Bar of Texas Number 24046692
Smith County Courthouse, 4th Floor
Tyler, Texas 75702
Phone:  (903) 590-1720
Fax:  (903) 590-1719
Email:  arediker@smith-county.com

# TABLE OF CONTENTS

Index of Authorities......................................................................................2

Statement of Facts ......................................................................................3

Summary of Argument ................................................................................4

**I.Issue**:  As there was at least some non-accomplice evidence that tended to connect appellant with the victim's murder, the accomplice witness testimony introduced at trial was sufficiently corroborated..............................................................5

Standard of Review......................................................................................5

Argument.....................................................................................................6

   A) Accomplice Witness Testimony .........................................................7

   B) Non-accomplice Evidence...................................................................9

**II.Issue Two**:  As appellant did not present affirmative evidence raising the lesser-included offense or that rebutted or negated his intent to commit murder, the trial court properly refused a jury instruction on manslaughter. ...............................................13

Standard of Review......................................................................................13

Argument.....................................................................................................14

Certificate of Compliance ...........................................................................20

Certificate of Service...................................................................................20

## INDEX OF AUTHORITIES

### Texas Cases

*Bignall v. State*, 887 S.W.2d 21 (Tex. Crim. App. 1994)..........................................14

*Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. 2008) ........................................10

*Brown v. State*, 672 S.W.2d 487 (Tex. Crim. App. 1984) ........................................11

*Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012)......................................14

*Cocke v. State*, 201 S.W.3d 744 (Tex. Crim. App. 2006) .........................................12

*Cockrum v. State*, 758 S.W.2d 577 (Tex. Crim. App. 1988).....................................11

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007) .......................................12

*Gill v. State*, 873 S.W.2d 45 (Tex. Crim. App. 1994)...............................................12

*Godsey v. State*, 719 S.W.2d 578 (Tex. Crim. App. 1986) .......................................18

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)............................................13

*Hatton v. State*, 31 Tex. Crim. 586, 21 S.W. 679 (1893) .........................................18

*Joubert v. State*, 235 S.W.3d 729 (Tex. Crim. App. 2007) .........................................6

*Lofton v. State*, 45 S.W.3d 649 (Tex. Crim. App. 2001) ..........................................14

*McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App. 1997) .............................. 5, 6, 9

*Medina v. State*, 7 S.W.3d 633 (Tex. Crim. App. 1999)............................................18

*Patterson v. State*, 950 S.W.2d 196 (Tex. App.—Dallas 1997, pet. ref'd) ... 16, 17, 19

*Rojas v. State*, 171 S.W.3d 442 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)19

*Roys v. State*, 416 S.W.3d 229 (Tex. App.—Amarillo 2013, pet. ref'd)...................11

*Smith v. State*, 332 S.W.3d 425 (Tex. Crim. App. 2011).......................... 5, 7, 11, 12

*Vuong v. State*, 830 S.W.2d 929 (Tex. Crim. App. 1992) ........................................18

*Wortham v. State*, 412 S.W.3d 552 (Tex. Crim. App. 2013) ....................................13

### Texas Statutes

Tex. Code Crim. Proc. Ann. art. 36.14....................................................................13

Tex. Code Crim. Proc. Ann. art. 38.14......................................................................6

Tex. Penal Code Ann. § 19.02.................................................................................15

Tex. Penal Code Ann. § 19.04.................................................................................15

Tex. Penal Code Ann. § 6.03...................................................................................15

**NUMBER 12-14-00255-CR**

**IN THE TWELFTH DISTRICT COURT OF APPEALS
TYLER, TEXAS**

**DENNIS MONTRELL BENDY,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

From the 241st District Court of Smith County, Texas
Trial Cause Number 241-1575-13

# STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the undersigned Assistant Criminal District Attorney, respectfully requesting that this Court overrule appellant's alleged issues and affirm the judgment of the trial court in the above-captioned cause.

STATEMENT OF FACTS

Appellant has stated the essential nature of the proceedings and the evidence presented at trial (Appellant's Br. 2-4). In the interest of judicial economy, any other

3

facts not mentioned therein that may be relevant to the disposition of appellant's issues will be discussed in the State's arguments in response.

## SUMMARY OF ARGUMENT

The non-accomplice evidence introduced at appellant's trial for the murder of Briana Young strongly tended to connect him with the charged offense. This evidence showed that appellant was with the accomplice shortly before the murder in the vehicle identified by an eyewitness as belonging to the shooters, he was also close to the scene of the crime at the time of the murder based on cell phone records, and he enlisted a witness's aid in disposing of one of the weapons used in the shooting. Regarding his second alleged issue, appellant did not present any affirmative evidence that both raised the lesser-included offense of manslaughter and that rebutted or negated his intent to commit the charged offense of murder. The evidence relied on in appellant's brief would not permit a jury to rationally conclude that if he was guilty, he was guilty only of the lesser-included offense of involuntary manslaughter.

4

**I. ISSUE**: As there was at least some non-accomplice evidence that tended to connect appellant with the victim's murder, the accomplice witness testimony introduced at trial was sufficiently corroborated.

STANDARD OF REVIEW

"The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. In order to determine whether the accomplice witness testimony is corroborated, we eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense." *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (citations omitted). In *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011), the Court of Criminal Appeals further explained that:

> When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence. (footnotes omitted).

5

"The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt; but rather, the non-accomplice evidence merely has to tend to connect appellant to the offense. Thus there must simply be some non-accomplice evidence which tends to connect appellant to the commission of the offense alleged in the indictment." *McDuff*, 939 S.W.2d at 613 (citation omitted). "The appellant's liability as a principal or under a parties theory is of no relevance under an Article 38.14 analysis . . . the connection need not establish the exact nature of his involvement (as a principal or party)." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007).

## ARGUMENT

In his first alleged issue, appellant argues that the accomplice witness testimony implicating him in Briana Young's murder was not sufficiently corroborated at trial (Appellant's Br. 8-14). "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 2014). "An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state. Presence at the crime scene does not make a person an accomplice; an accomplice must have engaged in an affirmative act that

6

promotes the commission of the offense that the accused committed." *Smith*, 332 S.W.3d at 439 (footnotes omitted).

## A) ACCOMPLICE WITNESS TESTIMONY

The two witnesses named in the trial court's accomplice witness instruction at the guilt/innocence phase of trial were Rakheem Goldstein ("Booby") and Stephan Whitemon ("Sticky") (Clerk's R. at 194). Appellant, Booby, and Elisha Williams ("E.J.") were all members of the Rolling 60s criminal street gang at the time of the offense (XII Rep.'s R. at 103, 109). At trial, Booby testified extensively regarding the events leading up to and following Briana Young's murder in P.T. Cole Park in Tyler on the evening of 30 July 2013. Earlier that afternoon, appellant had called him to complain that Ke'Avier Wilson-Hurd ("K.J."), a rival gang member, had shot at appellant while he was driving on Earl Campbell Road at approximately 6:30 p.m. (*Id.* at 131, 134-35, 139). At 7 p.m., Booby and appellant met, and appellant expressed his desire to "retaliate" against K.J. (*Id.* at 133, 140). Booby and appellant began driving around to several locations within Tyler to pick up an assault rifle and a 9mm Glock pistol (*Id.* at 141-42, 146, 148-51). After arming themselves, they switched cars with Booby's girlfriend, Madeline Wallace, at a Food Fast (*Id.* at 153-57). Appellant and Booby did not want to be seen in appellant's silver Lincoln sedan anymore, as they were about to go looking for a guy they might shoot (*Id.* at 154).

7

They exchanged the Lincoln for Ms. Wallace's white Hyundai Elantra and left to pick up E.J. with appellant driving and Booby in the passenger seat (*Id*. at 157-58). Appellant is driving because Booby did not have a driver's license and they did not want the police to search the car if they happened to be pulled over (*Id*. at 158). They brought extra shirts so they can change clothes if they happen to see K.J. (*Id*. at 159). After picking up E.J. on Peach Street, E.J. receives a call that K.J. is in Cole Park, and the three men take off with appellant in the driver's seat, E.J. in the front passenger seat, and Booby in the back seat (*Id*. at 160-61, 163). Appellant was carrying the Glock, Booby the assault rifle, and E.J. had brought a Ruger SR9 9mm pistol (*Id*. at 127, 183). They arrived at the park at around 9 p.m., and when E.J. spotted K.J., appellant dropped him off on Shaw Street in order to ambush K.J. and prevent his escape (*Id*. at 164, 166-67). Appellant then circled around to Mockingbird Lane, stopped and exited the vehicle, and began shooting at K.J. with the Glock pistol (*Id*. at 170, 180, 182). Almost simultaneously, E.J. began firing at K.J. from the restroom area closer to Shaw Street with the Ruger (*Id*. at 180, 182-83). K.J. managed to run to his parked car without being hit by the gunfire, and appellant, Booby, and E.J. then fled the scene (*Id*. at 185-86). About thirty minutes later, Booby learned that Ms. Young had been shot and killed in the crossfire, and he and appellant then delivered the Glock and assault rifle to Katyron Barrett's ("Main") house on Boon Street for

8

disposal (XIII Rep.'s R. at 9-11, 15, 20-21). After getting rid of the weapons, appellant and Booby switched cars with Ms. Wallace again and then went their separate ways (*Id.* at 24, 26-27). The second accomplice witness named in the court's charge, Stephan Whitemon, testified that he did provide the assault rifle to appellant and Booby on the day of the shooting and then took possession of the murder weapon, the Ruger SR9 9mm pistol, from E.J. after Ms. Young had been shot to death (XVI Rep.'s R. at 70-71, 74-77, 79-80, 83). Whitemon buried the pistol in his backyard before later providing the weapon to law enforcement (*Id.* at 186-87).

## B) NON-ACCOMPLICE EVIDENCE

Ms. Wallace and her friend, Kiara Cain, who was with her at the time of the first car exchange at Food Fast, both testified at trial, and they confirmed that Ms. Wallace let Booby and appellant borrow her white Elantra close to the time of the murder (X Rep.'s R. at 152-56, 168-69; XI Rep.'s R. at 22, 27-28). Surveillance footage at the Food Fast also showed the car exchange with appellant occurring shortly after 8 pm (X Rep.'s R. at 168; XI Rep.'s R. at 27; State's Ex. 6). *See McDuff*, 939 S.W.2d at 613 ("Evidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence."). Darrian Lee, an associate of K.J. and fellow gang member, who was with him at Cole Park that night, identified Ms. Wallace's white Elantra as the vehicle that dropped off an individual on

9

Shaw Street and then circled around to Mockingbird Lane (XII Rep.'s R. at 49, 54-56; State's Ex. 7). He testified that the ensuing gunfire came from the direction of the Elantra on Mockingbird and the bathrooms close to where the individual had earlier been let out of the same car on Shaw (*Id*. at 59-61, 67). Ballistics testing revealed that the eight 9mm shell casings recovered near Mockingbird were fired from the Glock pistol and the 11 shell casings found near the restrooms were fired from the Ruger SR9 (XVIII Rep.'s R. at 66-67, 70-71, 73-74, 76-77). The bullet retrieved from the victim's body during the autopsy had been fired from the Ruger (*Id*.). Ms. Young had received a fatal gunshot wound to the heart and second gunshot wound to her left thigh (XVII Rep.'s R. at 107, 111-13, 117, 127; State's Ex. 209). Barrett testified that in the early morning hours of 31 July 2013, appellant and Booby had arrived at his house in what appeared to be the same white Elantra seen at the park (XIII Rep.'s R. at 204-06, 209-11, 213-14, 217-18, 221). *See Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (evidence that defendant was seen in vehicle that matched the description of the one used by the perpetrators of the crime tends to connect him with the offense). Booby handed over a bag containing the Glock and the assault rifle to another man at the house, Tyiska Gray, who then dumped the guns in the woods (Id. at 206, 209-10, 214, 217; XIV Rep.'s R. at 12, 15). Barrett later led Tyler police officers to the weapons (XVII Rep.'s R. at 66). *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex.

10

Crim. App. 1988) ("Proof that connects an accused to a weapon used in an offense is proper corroborative evidence. Even evidence that a defendant had a gun which was merely similar to the murder weapon may corroborate accomplice testimony."); *Roys v. State*, 416 S.W.3d 229, 235 (Tex. App.—Amarillo 2013, pet. ref'd) (evidence that defendant gave weapons used in committing the offense to a third party for disposal tends, strongly, to connect him with the murder). The State also introduced cell phone records and testimony from an RF engineer showing that calls from appellant's cell phone were placed near Cole Park to Barrett within several minutes of the murder (XV Rep.'s R. at 33-34, 44, 46-47, 71-72). *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."); *Smith*, 332 S.W.3d at 442 ("Motive and opportunity evidence is insufficient on its own to corroborate accomplice-witness testimony, but both may be considered in connection with other evidence that tends to connect the accused to the crime.").

Appellant argues, however, that Barrett, Cain, and Wallace were accomplices and therefore their testimony could not serve to corroborate that of Booby and Whitemon (Appellant's Br. 9-12). "A person is not an accomplice if the person knew about the

11

offense and failed to disclose it or helped the accused conceal it." *Smith*, 332 S.W.3d at 439. Merely assisting after the fact in disposing of a victim's body or the murder weapon does not transform a witness into an accomplice in a prosecution for murder. *Druery v. State*, 225 S.W.3d 491, 500 (Tex. Crim. App. 2007). Further, appellant does not point to any evidence in the record suggesting that Cain, Wallace, or Barrett, acting with the required culpable mental state to cause the victim's death, actively participated with appellant before, during, or after the commission of the murder or that they acted in a manner to promote the offense with which appellant was charged[1]. *See Smith*, 332 S.W.3d at 439; *Druery*, 225 S.W.3d at 500; *Cocke v. State*, 201 S.W.3d 744, 748-749 (Tex. Crim. App. 2006); *Roys*, 416 S.W.3d at 234. Therefore, these witnesses were not accomplice witnesses as a matter of law or fact, and their testimony properly corroborated that of Booby and Whitemon. As "[r]easonable jurors could conclude that that evidence, when viewed as a whole, tended to connect appellant to the offense committed," the non-accomplice evidence detailed above, including that of Cain, Wallace, and Barrett, sufficiently corroborated the accomplice witness testimony. *See Gill v. State*, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994).

---

[1] Both Cain and Wallace denied any knowledge that appellant intended to use the Elantra to commit a crime (X Rep.'s R. at 156; XI Rep.'s R. at 22).

**II. ISSUE TWO**:  As appellant did not present affirmative evidence raising the lesser-included offense or that rebutted or negated his intent to commit murder, the trial court properly refused a jury instruction on manslaughter.

STANDARD OF REVIEW

"[T]he judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case . . ."  Tex. Code Crim. Proc. Ann. art. 36.14 (West 2014). In *Hall v. State*, the Court of Criminal Appeals "sets forth the two-part analysis used to determine whether a defendant is entitled to a jury instruction on a lesser-included offense."  *Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013) (citing *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)).  "Using the 'cognate pleadings' approach, an appellate court must first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense.  If it is, the court must then determine whether the evidence admitted at trial supports the instruction."  *Wortham*, 412 S.W.3d at 554 (footnote omitted).  Under the second part of the analysis, "anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge.  In other words, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense."  *Hall*, 225 S.W.3d at 536.

13

In his second issue, appellant argues that the trial court erred in refusing to instruct the jury on the offense of manslaughter as a lesser-included offense of murder (Appellant's Br. 15-21). As the Court of Criminal Appeals explained in *Cavazos v. State*:

> "[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense. . . . If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative. While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.

*Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (citations omitted). "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). "A defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense." *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). Here,

14

appellant challenges the trial court's denial of the instruction under the second part of the *Hall* analysis, alleging that the evidence was sufficient to establish manslaughter as a valid, rational alternative to the charged offense of murder (Appellant's Br. 15-21). A person commits the offense of murder, "if he intentionally or knowingly causes the death of an individual . . . or commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(1), (3) (West 2014); Clerk's R. at 1). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (West 2014). A person commits the offense of manslaughter, "if he recklessly causes the death of an individual." Tex. Penal Code Ann. § 19.04(a) (West 2014). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tex. Penal Code Ann. § 6.03(c) (West 2014). Nevertheless, appellant does not cite to any evidence in the record rising

15

to the level that a rational jury could find that if he was guilty, he was guilty only of manslaughter (Appellant's Br. 17-19).

Instead, appellant relies on Booby's testimony that appellant only wanted to "retaliate" for K.J.'s shooting at him earlier in the day, that *Booby* didn't think they would actually encounter K.J. that day, Booby and appellant did not discuss scaring, hurting, or killing K.J. prior to the shooting, *Booby* did not think appellant was going to start shooting at K.J., and appellant had reassured Booby that he had good aim when Booby voiced his concern that there were a lot of people, including children, at the park (XII Rep.'s R. at 140, 151-52, 165, 170). "The fact that the State, in proving murder, also proves involuntary manslaughter does not alone entitle appellant to a charge on the lesser offense." *Patterson v. State*, 950 S.W.2d 196, 200 (Tex. App.—Dallas 1997, pet. ref'd). In *Patterson*, the Fifth Court held that testimony very similar to Booby's did not constitute some evidence that, if the defendant was guilty, he was guilty only of the lesser offense of manslaughter:

> He further relies on testimony of Christopher Chapman, part of the Sherman group. Chapman testified that before the shooting, Jackson said he was going to "do" the Denison group. Chapman "thought" this meant Jackson was going to fight them. Chapman never "foresaw" anyone wanting to kill the Denison group. Appellant acknowledges that this evidence could be interpreted to show he is guilty of murder. Nevertheless, he asserts that this same evidence could also be interpreted to show appellant did not intend to cause death or serious bodily injury and was, thus, guilty only of involuntary manslaughter. We agree with appellant that a lesser included offense may be raised when the evidence

16

on the issue is subject to two different interpretations, and one interpretation negates or rebuts an element of the greater offense. *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996)(per curiam). The evidence appellant relies on, however, while perhaps showing appellant was guilty of involuntary manslaughter, does not show he was not guilty of murder. Specifically, the evidence does not show appellant did not intend to cause death or serious bodily injury. That appellant chased the deceased's car and attempted to shoot at the moving vehicle does not show appellant did not intend to kill the deceased or cause the deceased serious bodily injury. Further, there is nothing in the record to show that appellant was not aiming the gun at the deceased inside the car. Nor did appellant assert he had no intent to kill or inflict serious bodily injury on the deceased. Further, evidence of fistfights and incidents of shooting at cars in the past does not negate appellant's intent on the date of the offense. Finally, Chapman's statement indicating he was unaware of appellant's intent to kill does not show appellant did not intend to kill the deceased or cause him serious bodily injury.

*Patterson*, 950 S.W.2d at 200-201. Here, as in *Patterson*, appellant did not testify or present any evidence directly germane to a lesser included offense at trial. In fact, Booby also testified that once they found out K.J. was in the park, appellant told Booby, "Yeah, I'm going to get that nigger." (XII Rep.'s R. at 163-64). After appellant, Booby, and E.J. arrived at the park, it was Bendy who came up with the plan to let E.J. out on Shaw street so that if K.J. ran that way, "he could shoot him." (*Id.* at 166-67). Appellant told E.J., "All right. Well, I'm going to let you off on this side, and, you know, I'm going to be on this – I'm going back, and you just start shooting when I start shooting." (*Id.* at 167).

17

Furthermore, the evidence showed that appellant and E.J. fired 19 rounds into a group of at least eight people in Cole Park on the night of the murder (XI Rep.'s R. at 86; XV Rep.'s R. at 245, 247-49; State's Ex. 9). The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result . . . 'If a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the evidence must be established by other facts.'" *Godsey v. State*, 719 S.W.2d 578, 580-581 (Tex. Crim. App. 1986) (quoting *Hatton v. State*, 31 Tex. Crim. 586, 586-587, 21 S.W. 679 (1893)). For example, "[a]ppellant's use of a deadly weapon in a tavern filled with patrons supplies ample evidence for a rational jury to conclude beyond a reasonable doubt that Appellant had the requisite intent to kill." *Vuong v. State*, 830 S.W.2d 929, 934 (Tex. Crim. App. 1992). *See Medina v. State*, 7 S.W.3d 633, 636 (Tex. Crim. App. 1999) (evidence sufficient to prove defendant acted "knowingly" in committing murder where defendant fired gun into crowd, killing two people); *Cavazos*, 382 S.W.3d at 385 (no evidence directly germane to recklessness, as "[p]ulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the

18

moment he fired the shots.'"); *Rojas v. State*, 171 S.W.3d 442, 447 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("The evidence supports the inference that appellant knew his shooting the gun in the general direction of a group of people including the four-year-old victim was reasonably certain to result in a death"). As neither Booby's testimony, nor any other evidence in this record, "would permit a jury to rationally conclude that appellant is guilty *only* of consciously disregarding a known substantial and unjustifiable risk that serious bodily injury or death would occur," he was not entitled to an instruction on the lesser-included offense of involuntary manslaughter. *See Patterson*, 950 S.W.2d at 201; *Cavazos*, 382 S.W.3d at 385. Appellant's second issue is without merit and should be overruled.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that the Court overrule appellant's alleged issues and affirm the judgment of the 241st District Court of Smith County, Texas, in the above-captioned cause.

Respectfully submitted,

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

/s/ Aaron Rediker
Aaron Rediker
Assistant District Attorney

19

SBOT #:  24046692
100 North Broadway, 4th Floor
Tyler, Texas 75702
Office:  (903) 590-1720
Fax:  (903) 590-1719 (fax)
arediker@smith-county.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned attorney certifies that the word count for this document is 4,175 words as calculated by Microsoft Word 2013.

/s/  Aaron Rediker
Aaron Rediker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of April 2015, the State's Brief in the above-numbered cause has been electronically filed, and a legible copy of the State's Brief has been sent by email to Austin R. Jackson, attorney for appellant, at JLawAppeals@gmail.com.

/s/  Aaron Rediker
Aaron Rediker